# EXHIBIT 6

## **DECLARATION OF JOHN LAWRIE**

1.      My name is John Lawrie, and I am over the age of nineteen (19) years. I have personal knowledge of the facts set forth set forth below pertaining to the case pending in the United States District Court for the Middle District of Alabama, Eastern Division, styled Beatrice Willis v. Sears, Roebuck and Co., CV-05-1019-W. I give this Declaration voluntarily, without coercion and under the penalty of perjury.

2.      I worked at Sears' Auburn, Alabama store as the Hardlines Manager from July 2004, until I voluntarily resigned in October 2005, to go work for another company. As the Hardlines Manager my duties included, but were not limited to, supervising the sales associates in the appliance, electronics, lawn and garden, fitness, vacuums and hardware departments, hiring and training associates who worked in these departments, counseling associates on their performance, and completing the weekly schedules for these departments. I reported directly to the Store General Manager ("SGM").

3.      At all times relevant to Willis' lawsuit against Sears, Kenny Reese was the SGM, Terry Gandy was the Loss Prevention Manager, and Byron Mason was the Softlines Manager. Reese and Gandy are white, and Mason is black.

4.      I recall that while I was the Hardlines Manager at the Auburn store, Sears offered various coupons to its customers. These coupons had terms and conditions written on them including what products the coupon could be applied to and what customers were eligible to receive these discounts.

5.      Additionally, I recall that Sears had a strict policy specifically prohibiting sales associates from giving unauthorized discounts to its customers. This included applying coupons to sales transactions when customers were not eligible to use the

coupon. This policy was stated in Sears' Associate Handbook which was distributed to all Sears' sales associates. Sears' policy provided that this conduct was unethical and that associates could be terminated for violating this policy.

6. During my employment at the Auburn store, myself and several other managers (including Byron Mason and Kenny Reese) held meetings with the sales associates and reviewed with them some of Sears' policies, including its unauthorized discount policy. We specifically instructed sales associates <u>not</u> to use coupons to close a sale or to give them to customers who <u>were not eligible</u> for them and that they could be terminated for this conduct. I recall that Willis was working as a sales associate in the appliance department when we held these meetings.

7. During my employment at the Auburn store, sales associates were trained to discard a coupon after they received it from a customer and applied it to a sale or to put it in the detail drawer to be turned into the cash office at the end of the day.

8. I recall that Sears had a $65.00 service coupon that its service technicians distributed to Sears' customers who had received a service call at their home but had declined to have their appliance repaired because they wanted to purchase a replacement. Sears offered this $65.00 coupon to these customers as an incentive for them to purchase a replacement item at Sears rather than one of its competitors. These coupons were distributed by Sears' service technicians and not Sears' sales associates. Only those customers who had received a service call and had declined a repair <u>were eligible</u> to receive this $65.00 discount. No other customers were permitted to receive this discount. I recall that this condition was clearly stated on the coupon.

9. I also recall that the service coupon itself had instructions on it specifically

directing sales associates to collect and destroy the coupon and not to reuse it.

10. I have never instructed Willis or any other sales associate to give a customer an unauthorized discount using Sears' service coupon or any other coupon. I never heard anyone in management instruct Willis or any other sales associate to give a customer an unauthorized discount using Sears' service coupon or any other coupon.

11. On or about October 31, 2004, I recall that Joel Smith, who was the owner of a delivery company that Sears used to deliver its appliances, came to the store and told me and Terry Gandy that Beatrice Willis, another sales associate in the appliance department, was attempting to give a customer free delivery. This was a violation of Sears' policy.

12. Gandy immediately began investigating this allegation and subsequently discovered that Willis was misusing Sears' $65.00 service coupon. (At that time, the cost of out of area delivery was $65.00.)

13. I recall that during Gandy's investigation, Gandy and I asked Willis what the sales associates were supposed to do with coupons they received from customers. Willis told me and Gandy that they were supposed to throw them away. I understand that later during her interview with Gandy and Sears' HR Lead regarding her misuse of the service coupon, she denied that she knew she was supposed to discard the coupon after receiving it from a customer.

14. I understand that Gandy's investigation revealed that Willis had given several customers a discount using the service coupon when they were not eligible for it, and that Willis was terminated for this blatant violation of Sears policy.

15. I understand that Gandy investigated all the remaining associates in the

appliance department including Denise Smith. I understand that this investigation revealed that Denise Smith was likewise giving customers, who were not eligible to receive it, discounts using Sears' service coupon. Smith was subsequently terminated for her misconduct.

16. Gandy never told me that "we were finally getting rid of the two black trouble makers in appliances." Nor did Gandy ever mention Willis' or Smith's race to me at anytime, including when he told me in November 2004, that Willis and Smith had been terminated for misusing the service coupon.

17. I understand that the decisions to terminate Smith and Willis had nothing to do with their race and that the decision was based solely on the results of the investigation, which showed that both Willis and Smith had misused Sears' service coupon.

18. I further understand that this same investigation revealed that Jackie Dodson (black), who also worked in the appliance department had one questionable transaction involving the service coupon. I understand that Dodson was able to explain this transaction and consequently she was not terminated.

19. I understand that the investigation revealed that no other associates had misused the service coupon.

20. Prior to Gandy's investigation in November 2004, I was not aware that any sales associates in the appliance department were using the service coupon to give customers unauthorized discounts.

21. I have no reason to believe that prior Gandy's investigation in November 2004, that Gandy, Reese, or any member of management was aware that anyone in the

appliance department was misusing Sears' service coupon to give customers unauthorized discounts.

22. I did not participate in the decision to terminate Denise Smith or Beatrice Willis.

23. I have never observed Reese or Gandy treat African-American employees less favorably than white employees.

24. I recall that Kenny Reese promoted several African-Americans when he worked at the Auburn store. Specifically, I recall that Reese promoted Denise Smith from a part-time position selling vacuums to a full-time sales position in the appliance department.

25. Kenny Reese did not always speak to me when he saw me.

26. I am white.

27. I never observed Kenny Reese call African-American sales associates away from the sales floor more often than any white associates. I observed that he would call the appliance department and whomever would answer the phone is the person he would ask to assist him. I never observed him single anyone out to perform certain tasks on the basis of their race when I worked at Sears.

28. I observed that Reese would help both black and white sales associates close sales. He did not just help the white associates.

29. Kenny Reese frequently asked me about how all the sales associates under my supervision were doing on their sales. He asked about both black and white sales

associates.

30. When I was the Hardlines Manager, Kenny Reese went to lunch with Byron Mason several times per week. Mason is African-American.

31. Between the time Smith and Willis were terminated and the time I stopped working at the Auburn store, I recall that I hired a few new associates to work in the appliance department. I recall that some of this new associates were African-American. Reese approved these hiring decisions.

32. I did not treat African-American employees less favorably than I treated white employees in any respect.

33. Sales associates in the appliance department were paid strictly on commissions.

34. When I was the Hardlines Manager, I was responsible for making the schedule for the sales associates in my department. I did not consider anyone's race when I made out the schedules. To make the schedules I used Sears' scheduling software. This was required by Sears. The associates provided me with their availability which generally stated what hours per week they were available to work (i.e. whether they were part-time or full-time). I entered this into the system. The software would then generate a schedule based on the employee's availability and the needs of the store for each particular week. If an employee wanted a specific day off beyond their normal availability, they were responsible for entering this request into the system. The system would time and date stamp these requests and take these requests into account when generating the schedule. At times, I had to add people to the schedule because of a promotion or for other business reasons. If no one was available because everyone wanted the same day off, I looked at

the time and date of each employee's request to determine who would be added to the schedule. The person who made their request last would be added to the schedule.

35. I specifically recall that Carolyn Landers, who is white, wanted a day off to go to an Auburn football game. I could not accommodate this request because I needed her to work that day.

36. When Stephanie Darby and Carolyn Landers worked in the appliance department they were both full-time students and were only available to work part-time. The scheduling software took this into account.

37. I am not aware of any Sears employee who has given a customer an unauthorized discount using a service coupon or any other coupon who has been retained by Kenny Reese, Terry Gandy or any Sears manager.

38. I recall that when I was the Hardlines Manager, Terry Gandy and Kenny Reese were involved in the terminations of several white sales associates for unauthorized discounts and other integrity issues. I specifically recall that Gandy and Reese participated in the decision to terminate Michael Cunningham (white) for offering delivery for less that the actual cost, and Chris Pritchett (white) and Brent Haney (white) for re-ringing customers' tickets to make their sales appear better than they actually were.

39. I never heard Kenny Reese, Terry Gandy, or anyone in management ever make any derogatory remarks about African-Americans.

40. I never heard Kenny Reese, Terry Gandy, or anyone in management say that Denise Smith or Beatrice Willis was terminated because of her race.

41. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Oct. 12th, 2006
---
DATE

*[signature: John Lawrie]*
---
JOHN LAWRIE