# EXHIBIT C

## DECLARATION OF BYRON MASON

1. My name is Byron Mason, and I am over the age of nineteen (19) years. I am African-American. I have personal knowledge of the facts set forth set forth below pertaining to the case pending in the United States District Court for the Middle District of Alabama, Eastern Division, styled Denise L. Smith v. Sears, Roebuck and Co., CV-05-1018-MHT. I give this Declaration voluntarily, without coercion and under penalty of perjury.

2. I have been employed with Sears, Roebuck & Co., for seventeen (17) years. I have worked at Sears' store located in Auburn, Alabama, at the Village Mall since 1996. From March 2002 until March 2006, I was the store's Softlines Manager. As the Softlines Manager I was responsible for overseeing the apparel, home fashions, luggage, and the shoe departments. In March 2006, I was promoted to the position of Store General Manager ("SGM").

3. Sears is a national retail store that sells fashion merchandise, hardware, paint, auto motive supplies, home fashions, home electronics, office equipment, and home appliances.

4. Sears employs sales associates throughout its stores. Sears also employs service technicians to travel to customers' homes to repair and perform preventive maintenance on the products it sells.

5. Sears offers various coupons to its customers. These coupons have terms and conditions written on them including to what products the coupon should be applied and what customers are eligible to receive the coupon.

6. Ever since I have worked for Sears, it has had a strict policy prohibiting employees from giving unauthorized discounts to its customers. This includes applying coupons to sales transactions when customers are <u>not eligible</u> to receive the discount. Sears considers this conduct to be completely <u>unethical</u> and grounds for <u>immediate termination</u>. This policy is clearly stated in Sears' Associate Handbook in the Code of Conduct section. All associates

1465226

receive and review annually Sears' Code of Conduct. A true and correct copy of Sears' Code of Conduct containing it unauthorized discount policy from Sears' Associate Handbook is attached to this declaration as Exhibit A.

7. Denise Smith began working at Sears in April 1998. I have attached as Exhibit B, a true and correct copy of Smith's Job Summary record which is kept in the ordinary course of business. Smith was initially hired as a part-time associate to sell vacuums and microwaves.

8. In April 2004, Kenny Reese, who was the SGM at the time, promoted Smith to a full-time position in the appliance department. (See Exhibit B, reflecting that Smith was promoted in April 2004). When Smith worked in the appliance department she reported directly to the Hardlines Manager.

9. As a sales associate in the appliance department, she was responsible for assisting customers, being familiar with Sears' promotions and discounts, selling appliances (including refrigerators, washers, dryers, ranges and ovens), keeping the sales area and the appliances clean, unpacking and setting out the appliances and the accessories on the sales floor for display, and any other duties miscellaneous tasks assigned by management. Sales associates in the appliance department are paid strictly on commissions.

10. While Smith was employed in the appliance department, I recall that myself and the other managers (including John Lawrie, who was a Hardlines Manager and Kenny Reese, who was the SGM), regularly held meetings with the sales associates to notify them of the Sears' various discount and promotions and who was eligible for them.

11. Sears requires its sales associates to either discard a coupon after they apply it to a sale or to put it in the detail drawer to be turned into the cash office at the end of the day.

12. In November 2004, I recall that Gandy investigated all the associates in the appliance department for using Sears' $65.00 service coupon to give customers unauthorized discounts. I understood that this investigation revealed that Beatrice Willis and Denise Smith were giving unauthorized discounts to Sears' customers and that they were terminated for their misconduct. (See Exhibit A).

13. At the time of their termination, Kenny Reese was the SGM, John Lawrie was the Hardlines Manager, Terry Gandy was the Loss Prevention Manager, and I was the Softlines Manager.

14. I understood that Reese and Gandy recommended that Sears terminate Smith and Willis and that their recommendations were approved by Sears' corporate Human Resources consultants. I further understood that this decisions to terminate Smith and Willis was based solely on the results of Gandy's November 2004 investigation.

15. I have no reason to believe that Willis' and Smith's terminations were based on their race or anything other than their improper use of the service coupon.

16. I never heard either Terry Gandy or Kenny Reese or any other member or management ever say anything derogatory about African-Americans.

17. Neither Kenny Reese, Terry Gandy or any other member of management ever told me that Sears was terminating Willis or Smith because of her race.

18. Prior to Gandy's investigation in November 2004, I was not aware that any sales associates in the appliance department were using the service coupon to give customers unauthorized discounts.

19. I am aware that Reese and Gandy decided to retain Jackie Dodson, an African-American appliance associate, even though she had a questionable transaction involving the service coupon. I understood that she was able to explain this suspicious transaction.

20. I have no reason to believe that prior Gandy's investigation in November 2004, that Gandy, Reese, or any member of management was aware that anyone in the appliance department was misusing Sears' service coupon to give customers unauthorized discounts.

21. I have never instructed Smith, or any other sales associate, to use the service coupon, or any other coupon, to give a customer an unauthorized discount. I never heard anyone in management instruct Smith, or any other sales associate, to use the service coupon, or any other coupon, to give a customer an unauthorized discount.

22. I was not aware that there were any service coupons by any of the registers in the appliance department. I have never used a service coupon or any other coupon to give a customer an unauthorized discount.

23. I never told Denise Smith that I thought all of the other sales associates were misusing the service coupon, or any other coupon, and that they should likewise be terminated.

24. Sears also has a policy prohibiting its employees from obtaining and using information about its customers, associates and suppliers for any non-business related reason. Any violation of this policy is likewise grounds for immediate termination. This policy is clearly stated in Sears' Associate Handbook, which was distributed to all Sears associates. (See Exhibit A, which is a true and correct copy Sears' Code of Conduct containing Sears' record policy).

25. I understand from my review of the documents produced by Smith during the discovery of this lawsuit that on or about November 5, 2004, Smith accessed and took information off of Sears' computers pertaining to the sales transactions of other associates,

information relating to managers' purchases from Sears, and other documents belonging to Sears for purely non-business reasons. Some of these documents contain confidential and proprietary information including credit card information. I learned of Smith's violation of this policy on or about April 26, 2006, when Smith disclosed these documents during the litigation of this lawsuit. Had Sears been aware of this misconduct at the time it occurred, it would have immediately terminated her employment.

26. I have never observed Reese treat African-American employees less favorably than white employees.

27. I heard Kenny Reese tell both black and white employees to stop watching television in the electronics department and to return to work. He would likewise instruct me to tell the sales associates under my supervision, both black and white, to return to work.

28. I observed that Reese asked both African-American employees and white employees to make copies of documents for him.

29. Kenny Reese frequently asked me about how all the sales associates under my supervision were doing on their sales. He asked about both black and white sales associates.

30. Kenny Reese was the one who actually promoted Denise Smith from a part-time position selling vacuums to a full-time sales position in the appliance department just a few months before her termination. (See Exhibit B).

31. I recall that Reese also promoted several other African-Americans when he worked at the Auburn store. I specifically recall that in addition to Smith, Reese promoted Stacy Dumas from Softlines Lead to Automotive Store Manager and Tammy Calhoun from Merchandising Associate to Merchandising Lead.

32. When Kenny Reese was the SGM, we went to lunch together several times per week. I am African-American.

33. I have never felt that Reese treated me any less favorably than white employees. In fact, Reese got along with me better than most other employees, including white employees.

34. I recall that after Smith's and Willis' termination at least one African-American was hired to work in the appliance department.

35. I never observed that John Lawrie treated African-American employees less favorably than white employees.

36. When Lawrie worked at the Hardlines Manager, I observed that he asked both white employees and black employee to set out the appliances and accessories on the floor and to clear the floor of empty boxes. These duties were apart of an appliance associates' job.

37. When the store was being remodeled, I recall that both black and white associates worked on the remodel team. Any associates who wanted to work on the remodeled team were allowed to do so. I recall that Smith did not want to work on the remodel team.

38. At first, Sears was paying the all the associates on the remodel team their benefit rate. The benefit rate is amount of sales divided by number of hours worked. However, Sears changed this rate to the training rate (which is a lesser rate) for all the associates on the remodel team because of the duration of the remodel and because associates were only supposed to be paid the benefit rate for vacation time or other paid time off. This reduction had nothing to do with anyone's race. This change was applied to both white associates and African-American associates.

39. I am not aware of any Sears employee who has given a customer an unauthorized discount using a service coupon, or any other coupon, who has been retained by Kenny Reese, Terry Gandy or any Sears manager.

40. Both Terry Gandy and Kenny Reese have been involved in the terminations of several white sales associates for unauthorized discounts and other integrity issues. I specifically recall that Gandy and Reese participated in the decision to terminate Michael Cunningham (white) for offering delivery for less that the actual cost, and Chris Pritchett (white) and Brent Haney (white) for re-ringing customers' tickets to make their sales appear better than they actually were.

41. I made the decision to terminate Geraldine Barnes (African-American) and Jimmie Tyson (African-American), both of whom worked part-time in Sears' shoe department. Neither Gandy nor Reese had anything to do with this decision. My decision was based solely on the fact that the shoe department was being reorganized and these individuals were not available to work the times and/or days that I needed them to work. My decision had nothing to do with their race.

42. I do not believe that Willis and Smith were terminated because of their race or that Gandy, Reese, or Lawrie dislike African-Americans.

43. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_6-14-06_  
DATE

_[signature]_  
BYRON MASON

1465226

7

![SEARS Human Resources]



Woody Haur
fill out
Truck Driving
Tuesday

# SEARS

## ASSOCIATE HANDBOOK

Code of Conduct, Company Policies, Benefits, Safety & Loss Prevention

EXHIBIT A

Full-Line and Automotive Associates




DEFENDANT'S EXHIBIT

# Code of Conduct



## Business Conduct

### What Does Proper Business Conduct Mean?
We are all responsible for treating each other, and our customers, as we ourselves wish to be treated. As part of the Sears family, we must commit to acting fairly and honestly at all times. These guidelines capture the spirit of that commitment.

### Selling Practices
Always do your work honestly and truthfully. Never misrepresent Sears products or services.

### Company Property and Records
Safeguard Sears merchandise, cash and Company records. Use Sears property, including information about our customers, suppliers, and Associates solely for business purposes. Maintain accurate documents, including the recording of time and transactions. The Company prohibits the use of any electronic recording device during conversations or meetings without the knowledge and consent of all parties to the conversation or meeting.

### Safety and Environment
Help Sears be a safe place to work and shop. Help protect the environment by conserving resources. Take any issues of concern to your supervisor or manager.

### Customer Focus and Respect
Treat Sears customers fairly and describe Sears products and services truthfully and accurately.

We deal fairly with everyone with whom we do business, whether a customer or Associate of, investor in, or supplier to Sears. To maintain the trust and respect of our customers, shareholders, Associates, suppliers, communities and business partners, we conduct business in an ethical manner each day. We are committed to vigorous and lawful competition based strictly on the merits of our products and services. Each Associate is expected to be honest with customers. You may not mislead customers through unfair methods of competition, deceptive acts or practices, false advertising claims, or misrepresentations regarding competitors.

### Conflicts of Interest
Act in the best interest of Sears and Sears customers. Avoid working for competitors unless approved by your manager. Do not accept gifts with a value in excess of $25 from companies that do business with Sears unless approved by your manager.

### Political Activities
You may participate in personal political activity, but your involvement must be on an individual basis, on your own time, and at your own expense. You must make it clear that your views and actions are your own and not those of Sears.

### Making the Right Call
The right choice isn't always the easy choice. Seek advice from your Unit Manager or call Associate Services at 1-888-88sears for clarification.

# Code of Conduct



### Guidance and Straight Answers

If you ever have an "ethical" concern, (i.e. theft, fraud, etc.) first consider approaching your Department Manager, Store Manager or Human Resources Representative. If you are not comfortable approaching in-store representatives with your concern, then our Office of Ethics and Business Practices can assist. Simply call 1-800-827-7478.

Ethics Communication Specialists are on duty 24 hours a day, 7 days a week. All calls are confidential. You do not have to give your name. The office will assign you a confidential case number for follow-up.

## Personal Conduct

*Conduct yourself in a professional manner. Never discriminate against any Associate or customer. Acts of violence, dishonesty, possession of a weapon, harassment, and use of alcohol or illegal drugs on Company premises will not be tolerated.*

### Sexual Harassment

For many years now, Sears has maintained a strong and clear policy prohibiting all forms of sexual harassment in the workplace. It is the policy of the Company that all Associates, of both sexes, be allowed to work in an environment free from sexual harassment and/or sex discrimination. This policy also applies to our conduct when dealing with customers.

Sexual harassment can take many forms, but simply defined, is any unwelcome conduct of a sexual nature. It includes unwelcome sexual advances, requests for sexual favors, other visual, verbal, or physical conduct of a sexual nature and other unwelcome conduct directed at an individual because of his or her gender or sexual orientation when a person's employment with Sears depends on submission to the conduct, submission to or rejection of the conduct affects employment decisions concerning the person; or such conduct unreasonably interferes with a person's work performance or creates an intimidating, hostile or offensive work environment.

### Forms of Sexual Harassment

Sexually harassing conduct includes, but is not limited to:

- repeated or unwelcome sexual flirtations, advances or propositions
- continued or repeated verbal abuse of a sexual nature
- graphic verbal commentaries about a person's body
- sexually degrading words used to describe an individual
- the display in the workplace of sexually suggestive objects or pictures
- other unwelcome conduct directed at an individual because of his or her gender
- Sexual harassment also encompasses all forms of retaliation against an Associate who has complained of sexually harassing conduct

Any Associate who believes that he or she is being harassed should take the following steps:

- Explain the situation to your immediate supervisor.
- If you are not satisfied with your supervisor's response, or if you are uncomfortable speaking with your supervisor, immediately contact the supervisor's manager or your human resources representative.
- If you still feel that sufficient attention has not been given to your complaint, or if you are uncomfortable talking with someone in your unit, contact 1-888-88sears.

The Company will investigate all complaints of sexual harassment and take appropriate action. Any violation of this policy will result in disciplinary action up to and including termination.

# Code of Conduct

   

## Workplace Violence

It is the policy of the Company to provide an environment in which all Associates are allowed to work – and all customers are allowed to shop – free from workplace violence. The term "workplace violence" covers many different actions which affect our fellow Associates, our customers, the workplace and Sears. While we may not always agree with our fellow Associates, customers, or decisions made by Sears, we are all expected to act professionally no matter what our position or level of authority. We must treat everyone with dignity and respect, and adhere to the fundamental values and principles outlined in our Code of Conduct. By dealing honestly, responsibly and fairly with everyone with whom we do business, we will do our part in creating a safe working and shopping environment.

### Workplace violence is defined as:

Any direct or implied threat, intentional act or other conduct that would arouse fear, hostility, intimidation or the apprehension of harm in another person for his/her safety, the safety of his/her family, friends, co-workers, employer or property. The policy applies to threats or other conduct that:

- occurs on Company premises
- occurs during the course of Company business
- occurs through the use of Company property
- involves other Associates, and/or
- affects Sears business interests

The policy also includes the no weapons policy.

### Examples of Workplace Violence

Acts of violence, including, but not limited to the following, will not be tolerated:

- Bringing or using weapons of any kind at any time while on Company property, including parking lots, or while engaged in conducting Company business.
- Starting or participating in a physical or verbal fight. Punching, slapping, abusive use of profanity or any type of assault on another person.
- Participating in dangerous horseplay of any kind.
- Threatening or intimidating another person in any manner.

An Associate who has a concern regarding safety in the workplace is encouraged to immediately report such concern to his/her Unit Manager, or directly to the Human Resources Department. The Company will investigate all complaints and take all appropriate action necessary, including criminal prosecution if applicable.

Any Associate who is found to have violated this policy is subject to disciplinary action up to and including termination.

# Code of Conduct



## Workplace Conduct

Most of the time, good judgement will tell Associates the right thing to do. But just for your information, the following are examples of business and personal conduct that can lead to termination of employment.

### Business Conduct

If you want to notify Sears of inappropriate business conduct, but are uncomfortable speaking with someone in your unit, contact the Office of Ethics and Business Conduct at 1-800-8ASSIST.

Examples of unacceptable business conduct include, but are not limited to:

- Theft or dishonesty
- Soliciting or accepting gifts (money or merchandise) in connection with a Company transaction of any kind
- Conducting other than Company business on Company property, or while engaged in Company business at a customer's home or business
- Committing, or attempting to commit, deliberate damage to Company property, advocating or taking part in unlawful seizure of, or trespassing on, Company property
- Violating Associate discount policy; giving unauthorized mark downs to customers/Associates
- Misusing Company resources, including but not limited to the misuse, personal, or nonwork-related use, alteration, theft, destruction, or unauthorized disclosure to a third party of computer resources, trade secrets or other confidential information
- Removing merchandise or Sears property from a unit without evidence of purchase
- ★ Using someone else's Associate number when ringing sales
- ★ Handling your own transactions or transactions for members of your family, including sales, refunds, cashing checks, and the like
- Failing to follow proper procedures for handling sales and cash
- Failure to follow Automotive wheel torque policy (Automotive)
- Working on your personal vehicle (Automotive)

### Personal Conduct

If you want to notify Sears of inappropriate personal conduct but feel uncomfortable speaking with someone in your unit, contact a professional HR Consultant at Associate Services by calling 1-888-88sears.

Examples of unacceptable conduct which can lead to termination include, but are not limited to:

- Unsatisfactory performance of your job
- Willful misconduct, including insubordination (disregarding legitimate directions from member of management)
- Disorderly conduct, including fighting with or assaulting other Associates or customers; reporting for work under the influence of liquor, drugs, or other stimulants, or consuming such substances while on Company premises
- Obtaining employment on the basis of false or misleading information
- Falsifying attendance by clocking in for another Associate, or permitting anyone else to clock in for you
- Excessive absences or tardiness, including absence from your job for two consecutive days without notifying your unit
- Failing to conduct yourself in a reasonable and businesslike manner with customers, fellow Associates, supervisors and management
- Harassing, insulting, or otherwise mistreating any fellow Associate or customer on the basis of that person's race/color, religion, sex, sexual preference/orientation, age, national origin, ethnicity, ancestry, disability or marital or veteran status
- Failure or refusal to participate in a Company investigation, or any attempt to interfere with or impede a Company investigation
- Suspension or revocation of driver's license (Automotive)

Job Summary                                                                                     Page 1 of 1

New Window | Help

### Job Summary

Smith, Denise                    Employee                    EmplID: 01352712

Job Information                                  Customize | Find | View 7 |     First ◄ 1-14 of 14 ► Last

| General | Job Information | Work Location | Compensation |

| Eff Date | Sequence | Action | Action Reason |
|---|---|---|---|
| 11/15/2004 | 0 | Termination | Integrity |
| 06/20/2004 | 0 | Data Change | ZZ-7IT: FLSA(7I): FLSA(7I) Exm |
| 05/09/2004 | 0 | Job Chg without Rate Chg | Job Reclassification |
| 04/25/2004 | 0 | Promotion | Normal Career Progression |
| 04/27/2003 | 0 | Data Change | ZZ: Part-time to Part-time Vac |
| 05/10/2002 | 0 | Data Change | Correction-Department |
| 04/28/2002 | 0 | Data Change | ZZ: V to P Class Change |
| 10/14/2001 | 0 | Data Change | Correction-Department |
| 07/09/2000 | 0 | Family Status Change | Marital Status Change |
| 06/16/2000 | 0 | Family Status Change | Add Dependent |
| 05/01/2000 | 0 | Data Change | LTD Waived |
| 04/01/2000 | 0 | Data Change | PT Benefits Change |
| 05/17/1998 | 0 | Promotion | HOURLY TO HOURLY |
| 04/20/1998 | 0 | Hire | |





EXHIBIT B

nttps://srcsva1.sears.com/psc/srhrprd/EMPLOYEE/HRMS/c/ADMINISTER_WORKFORCE_(GBL).JO1.._ 05/12/2005

Smith v. Sears
00006
Produced by Defendant