IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **BEATRICE WILLIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:05-CV-1019-W |
| | ) |
| **SEARS, ROEBUCK & CO.,** | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Sears, Roebuck & Co., ("Sears" or "defendant") submits the following as its Reply Brief In Support of Its Motion for Summary Judgment.

**I.   INTRODUCTION**

In her *Response and Brief in Opposition to Defendant's Motion for Summary Judgment* ("plaintiff's opposition"), the plaintiff has completely failed to present any admissible evidence to create a genuine issue of material fact or to cite to the Court any law, let alone applicable law, that would defeat summary judgment in this case. Rather, in her opposition, the plaintiff attempts to confuse the Court by comparing apples to oranges and by relying on inadmissible hearsay, conclusory statements, and on facts which are simply *not material* to the issues in this case. Consequently, as established in its *Brief In Support of its Motion for Summary Judgment*, Sears is entitled to judgment as a matter of law on the plaintiff's sole claim of race discrimination.

**II.   ARGUMENT IN REPLY**

**A.   Gandy's Alleged Remark Does Not Constitute Direct Evidence of Intentional Race Discrimination.**

In her brief, the plaintiff makes a one-line conclusory statement that there is direct evidence to support her claim of race discrimination. The plaintiff's unsupported assertion is simply wrong. As illustrated in the defendant's *Brief In Support of its Motion For Summary Judgment*, the law is clear -- "to constitute direct evidence, the evidence must directly relate *in time and subject* to the adverse employment actions at issue." *See Jones v. BE&K*, 146 Fed. Appx. 356, 358 (11th Cir. 2005) (emphasis added). Moreover, it is well-settled that "[o]nly the most blatant remarks, whose intent could mean <u>nothing</u> other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Richardson v. Dougherty County*, 2006 WL 1526064 (11th Cir. 2006) (emphasis added) (quoting *Akouri v. Fla. Dep't of Transp.*, 408 F. 3d 1338, 1347 (11th Cir. 2005)). "This court has marked severe limits for the kind of language to be treated as direct evidence of discrimination. To give great weight . . . to language that is, at best, only circumstantial evidence blurs the important distinction between circumstantial evidence and direct evidence . . . . Blurring this distinction adds hurtful uncertainty to the law." *Jones v. Bessemer Carraway Medical Center*, 151 F. 3d 1321, 1322 n. 11 (11th Cir. 1998); *see e.g. Earley v. Champion International Corp.,* 907 F. 2d 1077, 1082 (11th Cir. 1990) (stating that "[o]ne example of direct evidence [of age discrimination] would be a management memorandum saying "Fire Earley--he is too old."). The plaintiff, here, has failed to present any such evidence.

The plaintiff alleges that Shannon Bryant, a former Sears employee who did not even work in the same department as the plaintiff and who was not at all involved in the investigation or the decision to terminate the plaintiff, allegedly overheard Terry Gandy, the Loss Prevention Manager, state that "we are finally getting rid of the two black

troublemakers in appliances." (Pltf. Brief p. 12). This remark does not amount to direct evidence of intentional race discrimination. According to Bryant's testimony, Gandy allegedly made this remark in *September 2004*. This was well <u>*before*</u> Willis even gave the unauthorized discounts to the customers for which she was terminated and <u>*before*</u> Gandy was aware of these impermissible discounts. Thus, it is impossible that this remark was made in the decision-making process. *See Jones*, 146 Fed. Appx. at 359 (holding that the alleged comments were not direct evidence of age discrimination because the remarks "did not refer to statements made during the decision-making process."); *Toney v. Montgomery Job Corps.,* 2006 WL 691188 (M.D. Ala. 2006) (the decision maker's comments that she was "a strong independent black woman and that the plaintiff could not handle it," and that "[she] was not going to allow anyone to run over [her]," were not direct evidence of discrimination because the plaintiff failed to present any evidence that these comments were made in connection with the employment decision).

Furthermore, Gandy's alleged comment requires an inference that the term "black" was a factor in the termination decision and not merely a descriptive term. *See Tran v. The Boeing Co.*, 190 Fed. Appx. 929 (11th Cir. 2006) (holding that the supervisor's comment referring to the plaintiff as a "stupid Asian" made on the same day the supervisor wrote a narrative that led to the plaintiff's layoff was not direct evidence of discrimination because the comment was made during a dispute about the plaintiff's prioritizing certain assignments; the comment was not made in the context of plaintiff's termination from employment); *Jones v. BE&K*, 146 Fed. Appx. 356 (11th Cir. 2005) (holding that the comment that the company decided to retain "a young engineer with a

lot of potential . . . for a number of different reasons" was not direct evidence of age discrimination; the term "young" was used as a descriptive term and not to convey that age was a factor in the decision).

Bryant claims that Gandy made this remark because Willis and Smith (the alleged "troublemakers") had complained about their schedules.  (Bryant depo. p. 72:7-73:21). Thus, even the plaintiff's own witness has interpreted this remark as illustrative of Gandy's discontent with the plaintiff's complaints about her schedule rather than any sort of racial animus.  Such a vague comment clearly does not establish discriminatory intent.  This is especially true in view of the undisputed fact that Gandy and Reese decided to _retain a black associate_ (Jackie Dodson) who had a questionable transaction involving the same service coupon, that Reese promoted several African-Americans, and that both Gandy and Reese participated in the decision to terminate several white employees for similar integrity issues.  (Pltf. depo. pp. 186:10-187:15, 242:2-243:3; Bryant depo. p. 74:12-21; Gandy Decl. ¶¶ 27-29, 45; Reese Decl. ¶¶ 20-22, 30, 40).  Consequently, the plaintiff cannot establish a claim of intentional discrimination based on direct evidence.

**B.   None of the Alleged Comparators are Similarly Situated to the Plaintiff.**

Likewise, the plaintiff cannot prevail on her claim using circumstantial evidence. The plaintiff has failed to present _any evidence_ that any of the alleged comparators are similarly situated to the plaintiff.  The Eleventh Circuit has repeatedly held that to satisfy this element "it require(s) [the plaintiff to establish] that the *quantity and quality* of the comparator's misconduct [is] *nearly identical* [to the plaintiff's] to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F. 3d 1364, 1368-69 (11th Cir. 1999) (emphasis added).  "[T]o

meet the comparability requirement a plaintiff is required to show that [she] is similarly situated in all relevant respects to the non-minority employee." *Silvera v. Orange Cty. School Bd.,* 244 F. 3d 1253, 1259 (11th Cir. 2001) (internal citations omitted).

In *Smith v. International Paper Co.*, 160 F. Supp. 2d 1335, 1340 (M.D. Ala. 2001), the plaintiff was terminated for falsifying his payroll records indicating that he *had attended* certain training classes when he *had not*. 160 F. Supp. 2d at 1338. The court held that the plaintiff *was not* similarly situated to the white employees he identified as potential comparators because the evidence showed that these individuals had either *missed* training classes and *were not* compensated for their time or *had actually attended* the training classes and *were paid*. 160 F. Supp. 2d at 1343-45. Simply put, the plaintiff was attempting to compare apples to oranges. 160 F. Supp. 2d at 1345.[1]

Likewise, in this case, the plaintiff is clearly confusing apples with oranges. It is *undisputed* that the plaintiff was terminated specifically for giving Sears' $65.00 service coupon to customers who *were not eligible* to receive it. (Pltf. depo. pp. 81:4-82:6, 89:9-114:21, Ex. 5, 131:14-132:3, 204:8-14; Gandy Decl. ¶ 17; Reese Decl. ¶ 18). Service coupons, unlike other Sears coupons, were given out by Sears' service technicians to customers who had received a service call and had declined to have their appliance

---

[1] *See also Ingalsbe v. Chertoff*, 2006 WL 908678 *9 (N.D. Ga. 2006) ("To establish a prima facie case of discriminatory discipline, Plaintiff would have to point to evidence that the identified comparator committed the same or similar infractions as the plaintiff . . . but did not receive disciplinary treatment as a result."); *Daniel v. Spectrum Stores, Inc.,* 381 F. Supp. 2d 1368, 1377 (M.D. Ga. 2005) (finding that the plaintiff was not similarly situated to the alleged comparator for purposes of his sex discrimination claim because the evidence showed that the plaintiff had missed a scheduled shift and the comparator had only objected to it); *Rayborn v. Auburn University*, 350 F. Supp. 2d 954, 962 (M.D. Ala. 2004) (awarding summary judgment in favor of the employer because the alleged comparator had merely acted without authorization by sending his shift workers to provide security to the stadium; he had not, like the plaintiff, blatantly ignored a direct order from his supervisor).

repaired. (Pltf. depo. pp. 75:1-76:22, Ex. 4; Gandy Decl. ¶ 10; Reese Decl. ¶ 7). Therefore, *only these customers* were eligible to receive this discount. (Pltf. depo. pp. 76:7-22, Ex. 4; Gandy Decl ¶ 10; Reese Decl. ¶ 7). Giving this coupon to customers who had *not* received a service call and declined a repair is an unmistakable violation of Sears' unauthorized discount policy. (Pltf. depo. p. 69:1-70:10, Ex. 3; Gandy Decl. ¶ 10; Reese Decl. ¶ 7).

In her brief, the plaintiff alleges that sales associates Stephanie Darby, Merle Miller, and Michael Cunningham are similarly situated to the plaintiff because they used coupons from the register drawer.[2] The plaintiff, however, does not present *any evidence* that these customers were *not eligible* to receive these discounts. The plaintiff offers *no testimony* as to what coupons were involved in these transactions, what the terms of these coupons were, or why these customers were not entitled to receive them. For example, the plaintiff claims Denise Smith, another sales associate who was also terminated for misusing Sears' service coupon, saw Michael Cunningham,[3] a white sales associate, use 5

---

[2] The plaintiff also states in a single, vague, and conclusory statement that Terry Gandy (the Loss Prevention Manager), Kenny Reese (the Store General Manager), and Carolyn Landers (an appliance associate) are white employees who misused coupons. (Pltf. Brief p. 13). The plaintiff offers no argument in support of this statement. However, as previously established in defendant's *Brief In Support of its Motion for Summary Judgment*, the plaintiff has no evidence that Landers gave an unauthorized discount using the service coupon. (Pltf. depo. pp. 178:2-186:9, Ex. 10, 218:1-10, 2:19:1-8). The plaintiff's only evidence consists of documents (associate summaries) related to Landers' sales transactions, which do not even identify what coupons were used or if the customers were eligible to receive them. (Pltf. depo. p. 178:2-186:9, Ex. 10, 218:1-10, 2:19:1-8). Additionally, the plaintiff offers no evidence that Gandy and Reese, both of whom are managers and had the ability to approve discounts and markdowns that sales associates did not, are similarly situated to the plaintiff. (Pltf. depo. pp.132:18-133:7).

[3] Additionally, the plaintiff *never* identified Cunningham as a potential comparator at any time during the course of discovery. Cunningham was not disclosed in the plaintiff's initial disclosures, her interrogatory responses, or even in her deposition.

to 8 coupons in a sale he made to Terry Gandy. (Pltf. Brief p. 3). The plaintiff offers absolutely *no evidence* of what these coupons were, let alone that Gandy was not eligible to receive these coupons. (Pltf. Brief p. 3). Similarly, the vague and irrelevant allegation that "several associates" allegedly "complained" about Cunningham and his "unethical selling practices" does not establish that Cunningham gave *unauthorized discounts* to anyone using the service coupon. It is well settled that such unsupported and non-specific assertions are not enough to establish that Cunningham engaged in conduct of the same "quality and quantity" as the plaintiff.

The plaintiff also contends that Stephanie Darby is similarly situated to the plaintiff. As established in Sears' *Brief in Support of its Motion for Summary Judgment*, the plaintiff has no personal knowledge to support her claim that Darby misused Sears' service coupon. Consequently, the plaintiff is forced to rely on the testimony of Shannon Bryant in an effort to establish this point. This attempt, however, fails. Bryant, who was not even a sales associate in the appliance department, presents the irrelevant fact that she personally witnessed Darby use a $30.00 coupon from the register. (Pltf. Brief p. 8). Even assuming that her statement is true, Bryant offers *no evidence* as to what the terms of this coupon were, let alone that the customer was *not eligible* to receive this discount. Bryant's testimony that Darby used a $30.00 coupon from the drawer without any evidence that the customer was not entitled to it does not establish that she engaged in the *same misconduct* as the plaintiff. Likewise, there is still no evidence that Gandy or

---

*See* Fed. R. Civ. P. 37(c)(1) which provides: "A party that without substantial justification fails to disclose information required by Rule 26(a) of 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Consequently, Sears contends that this testimony should be stricken from the record.

anyone else was aware of any alleged misuse of the service coupon by Darby. (Pltf. depo. p. 162:7-168:21, 176:19-177:1, 211:9-22). In fact, Darby was not even working as a sales associate at the time of Gandy's investigation. (Pltf. depo. pp. 176:19-177:1; Darby Decl. ¶ 2; Gandy Decl. ¶ 20). Thus, the plaintiff cannot establish that Darby was similarly situated to the plaintiff.[4]

Additionally, the plaintiff alleges that Merle Miller is similarly situated to the plaintiff. This allegation is completely unfounded. The plaintiff admits in her deposition that she *does* *not* *know* if Miller awarded the service coupon to any customers who were not entitled to it. (Pltf. depo. p. 193:16-22). The plaintiff only alleges that Miller used other associates' sales numbers to ring up sales while he was in training. (Pltf. depo. p. 193:10-22). Moreover, there is absolutely no evidence that when Miller allegedly used the service coupon that the customer had not in fact had a service call and was therefore *not* *eligible* for it. (Pltf. depo. p. 191:15-193:22).

Likewise, the plaintiff has not established that Gandy was aware that Miller had completed *any* transactions involving the *service* *coupon*, whether under his sales number or anyone else's. *See Jones*, 874 F. 2d at 1541-42 (holding that because the plaintiff had failed to produce any evidence that the decision makers knew of the comparators' [alleged misconduct], he could not establish that these comparators were similarly situated). The plaintiff was even given the opportunity to provide a statement to explain her misconduct involving the service coupon during Gandy's investigation. (Pltf. depo. pp. 126:5-127:12, 211:9-22). At no time however, did the plaintiff specifically identify

---

[4] *See Jones v. Gerwen*, 874 F. 2d 1534, 1541-42 (11th Cir. 1989) (holding that the decision makers must be aware of the alleged comparators misconduct to be similar situated to the plaintiff).

Miller as someone who had misused the service coupon. In fact, she admits in her deposition that she "did not tell them anything." (Pltf. depo. p. 126:-127:12, Ex. 6, 211:9-22; Gandy Decl. ¶ 17, Ex. D). Furthermore, it is undisputed that Gandy's investigation did not reveal that Miller, like the plaintiff, had misused the service coupon. (Pltf. depo. pp. 188:4-190:9; Gandy Decl. ¶ 21, 25). Thus, Sears had absolutely no reason to believe that Miller, like the plaintiff, had misused the service coupon. This obviously precludes a finding that Miller is properly comparable to the plaintiff.

The plaintiff's effort to establish in her opposition that Sears did not terminate similarly situated white employees for the same misconduct *fails* despite her reliance on a previously undisclosed comparator and the purely conclusory allegations of some former Sears employees. The plaintiff offers no evidence, and there is none, that Michael Cunningham, Stephanie Darby, or Merle Miller, gave customers a discount using Sears' $65.00 service coupon (or any other coupon) when the customer was *not eligible* for it. At best, the plaintiff in her brief establishes that Cunningham, Darby, and Miller used (not abused) coupons. The plaintiff completely fails to establish that *any* one of these individuals, like the plaintiff, *ever* gave a *service coupon discount* to a customer who was *not entitled to receive it* and/ or that management was aware of it.

C. **The Plaintiff Relies on Nothing More than Inadmissible Hearsay, Pure Speculation and Immaterial Facts in an Effort to Support Her Claim.**

In her opposition to Sears' motion for summary judgment, the plaintiff attempts to mislead the Court by trying to disguise *speculation* and *conjecture* as "facts," by relying on *inadmissible hearsay*, and by misdirecting the Court's attention to facts that are simply *immaterial*. Unfortunately for the plaintiff, this is insufficient to withstand Sears' motion for summary judgment.

Apparently not having any evidence of her own, the plaintiff again relies on Bryant's declaration in an effort to show that Gandy and Reese treated blacks differently than whites. (Pltf. Brief p. 10). Bryant claims that Byron Mason, who is African-American and who is currently the Store General Manager, told Bryant that they needed to watch each other's back because they were black and that Willis' termination was unfair and that Reese would have to terminate the whole store because everyone was using coupons out of the register drawer.[5] (Pltf. Brief p. 10). In addition to being a textbook example of <u>inadmissible hearsay</u>,[6] these assertions are simply <u>immaterial</u>. When considering motions for summary judgment, the court only determines whether genuine issues of material fact exist. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986). "Disputed facts that do not resolve or affect a suit properly will not preclude the entry of summary judgment." *Blue Cross Blue Shield of South Carolina v. Carillo*, 372 F. Supp. 2d 628, 640 (N. D. Ga. 2005) (citing *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505).

Mason's alleged comments, even if they were not hearsay, have no bearing on the outcome of the case. Willis was not terminated for using coupons from the register but for giving several customers a <u>discount</u> using the <u>service coupon</u> for which they were <u>not eligible</u>. Moreover, according to the plaintiff herself, Mason was not even involved in the investigation or decision to terminate her. (Pltf. depo. p. 143:7-17). Thus, it is

---

[5] Mason denies that he ever made any such a remarks. (Mason Decl. ¶ 23-25).

[6] *See Macuba v. Deboer*, 193 F. 3d 1316, 1322-23 (11th Cir. 1999) ("The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'"); *Pritchard v. Southern Co. Services*, 92 F. 3d 1130, 1135 (11th Cir. 1996); *Powers v. CSX Transp., Inc.*, 97 F. Supp. 2d 1297, 1308 n.1 (S.D. Ala. 2000) (granting defendant's motion to strike unauthenticated documents containing hearsay).

nothing more than his opinion about a situation of which he has no personal knowledge.[7] Therefore, Mason's perception as to the reason for the termination, or whether he thinks it was fair, simply is not relevant.

The plaintiff also alleges, again by merely citing Bryant's declaration, that Reese did not speak to the black associates, but only to black managers and white employees, that he placed Barbara McDonald, a white employee in the HUB office rather than a black employee after the department was reorganized, and that Reese asked about a white sales associate's schedule because he was concerned that her work schedule was interfering with her school schedule. (Pltf. Brief p. 10). First, Bryant does not offer any *facts* to suggest that Reese's actions had anything to do with race, but merely *speculates* that it does. Such evidence cannot create a material issue of fact on summary judgment. *See Brown v. CSC Logic, Inc.*, 82 F. 3d 651, 658 (5th Cir. 1996) ("Guesswork and speculation simply cannot serve as a basis for sending a case to a jury."); *Hedberg v. Indiana Bell Telephone Co.*, 47 F. 3d 928, 931-32 (7th Cir. 1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is the primary goal of summary judgment."); *Wilson v. Walgreen Co.*, 2006 WL 1794749 *7 n.4 (M.D. Ala. 2006) ("[Speculation] cannot create a material factual issues on summary judgment.").

Additionally, Bryant's assumptions do not outweigh the admissible, undisputed, relevant facts: (1) that Reese was responsible for promoting several African-Americans,

---

[7] *See Feazell v. Tropicana Products, Inc.*, 819 F. 2d 1036, 1041 (11th Cir. 1987) (upholding the district court's exclusion of opinion testimony of a former employee because it was irrelevant to the issue of intentional discrimination). *Johnson v. Scotty's, Inc.*, 119 F. Supp. 2d 1276, 1283 (M.D. Fla. 2000) (granting employer's motion to a strike portion of store manager's affidavit testimony offering her opinion as to management's employment decisions because they were conclusory and speculative).

including the plaintiff; (2) that he went to lunch with Byron Mason, who is African-American, almost every day; (3) that Jackie Dodson, a black sales associate who also worked in the same department, *was* *not* *terminated* despite a questionable transaction involving the same service coupon; and (4) that Gandy and Reese terminated other white employees for similar integrity issues. (Gandy Decl. ¶¶ 21-23, 45; Reese Decl. ¶¶ 22, 30, 31, 45; Mason Decl. ¶¶ 19, 28; Dodson Decl. ¶¶ 14, 15, 31; Pltf. depo. pp. 239:19-240; 242:8-243:2).

The plaintiff also claims in her brief that there is an issue of fact as to whether Terry Gandy could have and should have reviewed more than thirty days of journal tapes during his investigation. (Pltf. Brief p. 12). Even if there was an issue of fact as to whether he *could have*, which there is not,[8] this fact is *not* *material*. What is material is the fact that Gandy investigated thirty days of transactions covering the *same* time period for *all* the appliance associates. This is undisputed. (Gandy Decl. ¶ 14; Pltf. depo. p. 188:4-22). Additionally, it is undisputed that this investigation revealed the following: that the plaintiff had approximately *sixteen* transactions using the service coupon; that Dodson (black) had *four*, one of which was questionable; Smith (black) had at least *nine;* and Landers (white) had *one*. (Gandy Decl. ¶¶ 15, 19; Pltf. depo. pp. 188:4-190:9). Out of all of these associates, *only* the plaintiff and Smith were found to have given customers who were not eligible for this coupon the $65.00 discount. (Pltf. depo. pp. 188:4-190:9; Gandy Decl. ¶¶ 12, 15, 19-22).

---

[8] Despite the plaintiff's contention, this fact is not in dispute. The plaintiff clearly admits in her deposition that journal tapes were only saved for *thirty days*. (Pltf. depo. p. 115:2-8). Thus there is no dispute as to whether Gandy *could* *have* reviewed more than thirty days of journal tapes even if he wanted to. (Seemingly in an effort to create a factual dispute, the plaintiff relies on the testimony of Shannon Bryant, who was not even working at Sears at the time of the investigation. (Pltf. Brief p. 12)).

Likewise, the plaintiff's assertion that she was not specifically trained on Sears' coupon policy regarding their reuse is *immaterial*. (Pltf. Brief p. 5). Sears undisputedly has a written policy prohibiting associates from giving *unauthorized discounts*. (Pltf. depo. p. 69:1-70:10, Ex. 3; Gandy Decl. ¶ 5; Mason Decl. ¶ 6; Reese Decl. ¶ 4). The plaintiff, according to her own testimony, received a copy of this policy. (Pltf. depo. p. 67:12-23, Ex. 3). Additionally, the service coupon undisputedly has terms written on it indicating that *only customers* who had received a *service call* were entitled to receive this discount. (Pltf. depo. pp. 76:7-77:9, Ex. 4; Gandy Decl. ¶¶ 10, 11; Reese Decl. ¶7). Therefore, to the extent that the plaintiff was able to read (and there is no evidence that she could not), it is *irrelevant* as to whether she had *additional* training on Sears' unauthorized discount policy and the proper application of Sears' service coupon. As a result, it is clear that no issue of *material* fact exists, and Sears therefore requests that this Court grant Sears' Motion for Summary Judgment.

### III.  CONCLUSION

For these reasons and the reasons presented in Sears' *Brief in Support of its Motion for Summary Judgment*, Sears is entitled to a judgment as a matter of law as to plaintiff's claim.

        /s/ Mieke A. Hemstreet
        Mac B. Greaves (GRE007)
        Mieke A. Hemstreet (HEM007)
        Attorneys for Defendant
        Sears, Roebuck & Co.

OF COUNSEL:
BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203

Telephone: (205) 251-3000
Facsimile: (205) 458-5100

### CERTIFICATE OF SERVICE

    I hereby certify I have served a copy of the above and foregoing pleading on counsel by via First Class U.S. Mail and by filing the foregoing with the Clerk of the Court using the CM/EMF system on this the 12th day of February, 2007:

    T. Robin McIntyre
    2101 Executive Park Drive
    Opelika, AL 36801

    /s/ Mieke A. Hemstreet
    OF COUNSEL